UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>            v.                                              )<br>)<br>MACPHERSON OSEMWEGIE,                   )<br>a/k/a "Benedict LeJeune," a/k/a "George  )<br>Wood," a/k/a "Desmond Barnabas," a/k/a )<br>"Philip Weah,"                                         )<br>)<br>            Defendant.                                  )<br>) | Criminal No. 21-10219-DJC |

## GOVERNMENT'S SENTENCING MEMORANDUM

Between June 2017 through February 2020, defendant Macpherson Osemwegie participated in a conspiracy to steal almost $690,000 from nearly 100 victims. Osemwegie's role was to open bank accounts into which victim funds were transferred and quickly withdraw the funds. In less than three years, Osemwegie opened at least 16 bank accounts at seven banks using four different fraudulent passports. His victims, who were often elderly, were deprived of thousands of dollars, and in some instances, their life savings. For his conduct, Osemwegie should be sentenced to 46 months imprisonment, 24 months of supervised release, restitution of $686,264.31, and forfeiture in the form of a money judgment for $686,264.31.[1]

**Offense Conduct**

Osemwegie and his co-conspirators operated what is known as a "romance scam," a type of fraud in which conspirators create fictitious profiles on online dating or social websites. Conspirators then use these online dating profiles to capitalize on their (often elderly) victims'

---

[1] The Plea Agreement calls for a money judgment of $690,000. Based on further review, the government determined the loss amount was slightly lower—$686,264.31.

1

desire to find companions, gain their trust, and, once that trust is gained, direct victims to transfer money under false pretenses. Osemwegie's role in the scheme was to open bank accounts using fake identity documents to receive victim funds, quickly withdraw funds after victims deposited money into those accounts, and transfer the money to co-conspirators. Between May 2017 and February 2020, Osemwegie used at least four fake identities—"Benedict LeJeune," "George Wood," "Desmond Barnabas," and "Philip Weah"—to open 16 bank accounts at various local banks, including Bank of America, Citizens Bank, Eastern Bank, J.P. Morgan Chase Bank, Rockland Trust Bank, Santander Bank, and TD Bank. Nearly $690,000 flowed through these accounts in less than three years.

Among Osemwegie's victims is a now 70-year-old woman from Virginia Beach, Virginia, who sold her house and emptied her retirement account and sent the proceeds—her life savings—to accounts Osemwegie and co-conspirators controlled. This victim sent the funds under the belief that they were for a widowed U.S. Army officer stationed overseas named "David Smith," with whom she had been in an online relationship for more than two years, who purportedly needed funds for his daughter's college tuition and after he was shot in the line of duty.

Another victim is a now 64-year-old widower from Idaho Falls, Idaho, who worked as a nurse for 34 years, but has since suffered three heart attacks and is medically disabled. After her husband's death in a tragic accident, this victim began communicating with several individuals she met online, to whom she estimates that she sent between $300,000 to $500,000 to accounts Osemwegie and his co-conspirators controlled.

A third victim is a now 82-year-old woman from Portland, Oregon, who sent thousands of dollars to accounts Osemwegie and his co-conspirators controlled at the direction of "Rabello Birchell," with whom she had had a three-year online relationship over Facebook and WhatsApp. In total, nearly 100 victims transferred money to bank accounts that Osemwegie personally controlled.[2]

Separate from the romance scam, on or about March 3, 2021, investigators observed Osemwegie travel to five separate Walmart locations in Massachusetts. According to Walmart records, Osemwegie used multiple Green Dot cards to conduct cash withdrawals totaling $15,150 on that day. According to Green Dot records, the funds on those cards came from unemployment payments in the names of others. During a search of a storage unit one of Osemwegie's co-conspirators rented, and which Osemwegie and others were observed accessing, investigators found multiple Walmart receipts, more than 400 Green Dot cards, and a check from the Oregon Employment Department.

**Guideline Calculation**

The government agrees with Probation that Osemwegie's total offense level is 22 and that he falls in Criminal History Category II, yielding a Guidelines sentencing range of 46-57 months. PSR ¶¶ 30-42, 45-48.

**Sentencing Recommendation**

The government recommends a sentence of 46 months imprisonment, 24 months of supervised release, $686,264.31 in restitution, and a forfeiture money judgment of $686,264.31.

---

[2] Some of these victims also transferred funds to accounts controlled by other co-conspirators. The government is not seeking to hold Osemwegie responsible for additional funds transferred by these victims, or all of the funds flowing through co-conspirators accounts, which total in the millions of dollars, because these additional losses were not reasonably foreseeable to Osemwegie.

1. *The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.*

Osemwegie's crime was serious and caused significant harm. He and his co-conspirators capitalized on lonely, often elderly, individuals' desire to find companions, using promises of love to persuade victims to wire large sums of money into accounts that Osemwegie and his co-conspirators opened using counterfeit foreign passports. Some of these victims depleted their life savings. While Osemwegie may not have wooed the victims, he surely understood that they were wiring large sums of money to accounts he opened *in the names of individuals who did not exist*. Once victims wired money to these accounts, Osemwegie stood ready to collect, withdrawing the funds within days of deposit. This readiness to withdraw the money so promptly is an indication of the degree of coordination among the members of the conspiracy, which, as noted above, obtained millions of dollars from victims. The losses the fraud caused in such a short period, the number and identity of the victims, and the sophisticated manner in which it was carried out are measures of the seriousness of the offense and counsel in favor of a lengthy term of imprisonment.

Additionally, nothing in Osemwegie's background mitigates his culpability. By his own words, he had a "lovely" childhood and grew up middle class. PSR ¶ 55. He committed this offense as an adult with a history of employment who had been supporting himself legitimately and was in fact employed and earning an income when he committed this crime and had no need to steal. PSR ¶¶ 75-79.

2. *The Need for the Sentence Imposed To Promote Respect for the Law and to Provide Just Punishment for the Offense.*

Here, Osemwegie's motive was purely personal gain. He understood that his gain in this scheme represented another's loss. He did not act out of coercion, duress, or desperation. His participation was not the result of a momentary lapse in judgment or weakness of will. Rather,

4

he demonstrated a prolonged willingness to engage in an exploitation of victims for the sake of personal profit. For a financial crime, these factors point toward the highest degree of culpability.

   3. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct*

General deterrence is particularly important here. Online scams taking advantage of the lonely and elderly are rampant. *See, e.g.*, Federal Trade Commission, "Romance scams take record dollars in 2020," Feb. 10, 2021, available at https://www.ftc.gov/news-events/blogs/data-spotlight/2021/02/romance-scams-take-record-dollars-2020 (reported losses reached $304 million, up 50% from 2019); Federal Trade Commission, "New FTC Data Show Consumers Reported Losing More Than $200 Million to Romance Scams in 2019," Feb. 12, 2020, available at https://www.ftc.gov/news-events/press-releases/2020/02/new-ftc-data-show-consumers-reported-losing-more-200-million (reported losses reached $201 million, up 40% from 2018). The scam is easy to complete, and the huge amounts of money make it all too attractive to carry out. Often, those "wooing" the victims are located overseas, out of the reach of the government's jurisdiction. But, they depend on participants in the United States, like Osemwegie, to accomplish the scheme. His sentence should reflect the need to deter the many others who might otherwise engage in the same sort of misconduct if there is to be any chance of driving down the hundreds of millions of dollars in losses to victims annually. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated then sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation omitted).

4. *The Need to Avoid Unwanted Sentencing Disparities Among Defendants Guilty of Similar Conduct*

A sentence of 46 months is consistent with sentences imposed on other romance scam "money mules" in this district. In *United States v. Balogun*, 19-cr-10230-DPW, the defendant pled guilty to an indictment charging one count of money laundering conspiracy arising from similar romance and business email compromise scams. Judge Woodlock sentenced Balogun to 42 months' incarceration. Notably, Balogun's charge related to only one fraudulently opened account, and the intended loss was $531,981—approximately $150,000 less than Osemwegie.

In *United States v. Iyalekhue*, 20-cr-10208-RWZ, the defendant pled guilty to an information charging one count of conspiracy to commit mail and wire fraud and one count of money laundering in connection with a similar romance scam. Judge Zobel sentenced Iyalekhue to 63 months incarceration. Notably, Iyalekhue opened 10 fraudulent bank accounts—fewer than Osemwegie—but caused a loss of $813,098—approximately $125,000 more than Osemwegie.

A sentence of 46 months' incarceration falls comfortably between the sentences imposed in *Balogun* and *Iyalekhue*, and reflects the loss Osemwegie caused compared to these defendants.

**Conclusion**

For the reasons herein, the government recommends a sentence of 46 months imprisonment, 24 months of supervised release, restitution of $686,264.31, and forfeiture in the form of a money judgment for $686,264.31.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:  /s/ Kristen A. Kearney
Kristen A. Kearney
Dated: January 20, 2022        Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

   I, Kristen A. Kearney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

            By: */s/ Kristen A. Kearney*
               Kristen A. Kearney